UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL ANGELO BURNETT,

        Plaintiff,

v.                                     Case No. 2:05-cv-12
                                     HON. R. ALLAN EDGAR

PATRICIA CARUSO, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I. Facts

Plaintiff Michael Angelo Burnett, an inmate currently confined at the Marquette

Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against

several employees of the Michigan Department of Corrections (MDOC).  Specifically, Defendants

include MDOC Director Patricia Caruso, Chief Medical Director Craig Hutchinson, M.D., Chief

Medical Director George Pramstaller, D.O., Medical Officer for Region I William Boergerding,

M.D., Regional Health Administrator Jan Epps, R.N., MBP Staff Physician Rex McConnell, M.D.,

Cotton Correctional Facility Staff Physician Audberto Antonina, M.D., Former MBP Staff Physician

L. Carlyon, M.D., Brooks Correctional Facility (LRF), Physician's Assistant Spitters, LRF

Registered Dietician Anderson, MBP R.N. Ed Robinson, MBP Corrections Officer Royea, R.N. Ed

Jakubiszyn, the Michigan Department of Corrections (MDOC), Correctional Medical Services, Inc.

(CMS), and Doe Spencer[1].

_____

[1]Spencer Burke, R.N.

Plaintiff's complaint alleges that Defendants violated his rights under the Eighth Amendment by exhibiting deliberate indifference to his medical problems, which included gastroesophageal reflux disease (GERD).  Plaintiff is seeking compensatory and punitive damages, as well as injunctive relief.

## II. Analysis

### A.  Standard of Review

Presently before the Court is Defendants Hutchinson, CMS, Antonina, and Spitters' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) (docket #24)[2], Defendants MDOC, Caruso, Pramstaller, Anderson, Borgerding, Royea, Epp, Jakubiszyn and Burke's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #34), Plaintiff's Motion for Joinder (docket #62), and Plaintiff's Motion for Partial Summary Judgment (docket #63).  Defendants and Plaintiff have all filed responses and replies to the various motions and the matters are ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is

---

[2]Defendant McConnell joined in this motion (docket #30 and #45).

a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

### B. Exhaustion of administrative remedies

In the January 14, 2005, Motion to Dismiss (docket #24), Defendants claim that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies with regard to some of his claims. Defendants claim that Plaintiff failed to produce a step III response as to grievance number MBP-04-01-0011-12D3. In addition, Defendants state that Plaintiff failed to offer his Step I or Step III grievances with regard to grievance number JCF-02-12-03828. Defendants state that without such documents, Plaintiff has failed to comply with the exhaustion requirement with regard to Defendants Spenser and Caruso. In his response to this motion, Plaintiff notes that he attached a proof of mailing and verification of delivery of his Step III grievance appeal for grievance number MBP-04-01-0011-12D3 to "his declaration submitted with the complaint" in the form of a "certified mail & return receipt" signed by Jeremy Hall on March 8, 2004. Moreover, in Plaintiff's affidavit which is attached to his complaint, he attests that his step I grievance number

JCF-02-12-03828 was inadvertently thrown away.  Plaintiff then specifically described the contents of said grievance and notes that he was attaching copies of his step II and III grievance appeals, as well as the step II response.  A review of the attachments to Plaintiff's complaint reveals that he did in fact include such documentation.  Such documentation is sufficient to satisfy the exhaustion requirement.  *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).  Therefore, Defendants' claim regarding grievance number MBP-04-01-0011-12D3 is meritless.

In the motion to dismiss, Defendants state that grievance numbers MBP-04-01-232-28G, MBP-04-01-0169-28J, JCF-03-01-00157-28Z, and LRF-04-02-00287-28A were rejected as duplicative of prior grievances and that grievance number LRF-02-11-01686-12D1 was rejected at step III as being untimely.  Defendant claim that, as a result, Plaintiff's claims against Defendants Antonini, Spitters and CMS were not properly exhausted.  Defendants are incorrect.  A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").  The statute of limitations for filing a § 1983 action in this court is three years.  The fact that the MDOC has time limits for filing grievances which are significantly shorter than three years is of no concern to the court.  So long as Plaintiff has taken whatever measures are available for him to file a grievance naming the Defendant at some point during the three year period prior to filing an action in this court, he has complied with the exhaustion requirement.  The fact that it is untimely or duplicative in violation of state procedure is irrelevant.

Because Defendants have failed to support their claim that Plaintiff did not satisfy the exhaustion requirement with regard to some of his claims, the court need not address the supplement

to the motion to dismiss (docket #58), in which Defendants claim that they are entitled to dismissal pursuant to the total exhaustion rule.  Therefore, Defendants' motion to dismiss for failure to comply with the exhaustion requirement (docket #24) is properly denied.

### C.  Eighth Amendment

In his complaint, Plaintiff claims that he suffers from Gastroesophageal Reflux Disease (GERD).  Plaintiff states that GERD indicates incompetence of the lower esophageal sphincter, which results in stomach contents traveling back up the esophagus.  This reflux can result in damage to the lining of the esophagus.  No one knows what causes GERD, but when it is not treated, serious complications can occur, such as severe chest pain that mimics cardiac arrest, esophageal stricture, bleeding, and a "pre-malignant change in the lining of the esophagus" known as Barrett's Esophagus.  Plaintiff cites a 1999 study published in the New England Journal of Medicine, which show that patients with chronic, untreated heartburn of many years duration are at substantially greater risk of developing esophageal cancer, which is one of the fastest growing and most lethal forms of cancer.  Plaintiff states that symptoms such as difficulty swallowing (dysphagia), vomiting blood, tarry stools, shortness of breath, coughing, hoarseness and weight loss may suggest that serious damage has already occurred.

Plaintiff alleges that prior to the commencement of his complaint, neither the MDOC nor CMS had any written policies, guidelines or protocols concerning the diagnosis and treatment of GERD.  Plaintiff states that at the time he filed his complaint, there were no prisoners in the MDOC who were receiving treatment for chronic GERD and that there was a de facto policy to exclude as many prisoners as possible from eligibility for the following treatments: a medical prosthetic to elevate the head while in bed; a six small serving reflux diet; access to a specialist for GERD complications; esophagus biopsies; surgery; and management of chest pain.  Plaintiff alleges

- 5 -

that Defendants failed to properly diagnose and treat his GERD, and that such failure was motivated by a desire to save money and resulted in the wanton infliction of pain on Plaintiff.

Plaintiff states that he began to experience symptoms of GERD in 1992, but his condition was not diagnosed until 1993 by Dr. Haresh Pandya. Plaintiff has never been provided with any assistance for his pain, which mimics angina. On October 23, 2002, Plaintiff was transferred from the St. Louis Correctional Facility (SLF) to LRF with a medical order and detail for a six small feeding reflux diet. On the date of his transfer, Plaintiff experienced sudden debilitating chest pain and was taken to Hackley Hospital in Muskegon, Michigan. Plaintiff was subsequently prescribed pain medication for "chest wall pain." On October 24, 2002, Plaintiff was evaluated by Defendant Spitters, who told Plaintiff that he should be able to distinguish between esophagus chest pain and a cardiac arrest. Defendant Spitters also stated that Plaintiff's special diet would not be provided because the MDOC was discontinuing such diets.

On October 25, 2002, Plaintiff requested health care after choking on stomach contents while he was sleeping. Following the incident, Plaintiff suffered from intense abdominal, chest, and stomach pain. Plaintiff was referred to Defendant Anderson, who recorded that Plaintiff was asking for a reflux diet. On November 2, 2002, Plaintiff suffered a convulsion after choking on stomach fluid in his sleep. On November 3, 2002, Plaintiff's cellmate notified the Sergeant of the incident, which prompted a transfer to a bottom bunk in another cell.

On November 5, 2002, Plaintiff was seen by Defendant Anderson, who told him that she was not recommending a reflux diet for Plaintiff because of a previous store purchase of certain food items. Plaintiff replied that he had never been provided with any medical literature about GERD, so did not know what food items he should avoid. Moreover, Plaintiff stated that he did not consume the food items, but used them to barter with other prisoners. Defendant Anderson

- 6 -

responded that she was currently educating Plaintiff about GERD, but she did not provide him with any literature.  On November 20, 2002, Plaintiff was transferred to SLF by Health Services who stated that Plaintiff was an "[i]nappropriate transfer based on store list review."

On November 22, 2002, Plaintiff was interviewed by Dr. M. Engelsjerd, who told Plaintiff that he could purchase the store items and again ordered a transfer and a six small feedings/day diet.  Engelsjerd stated that medical personnel at LRF had no authority to override his medical order.  On December 9, 2002, Plaintiff was transferred to JCF, where he presented his medical detail to Defendant Spencer.  Defendant Spencer told Plaintiff that his detail would not be acknowledged because it was not issued by JCF staff.  On December 18, 2002, Plaintiff was summoned to Health Services for an intake assessment for the Chronic Care Clinic.  Plaintiff told Defendant Antonini about his medical detail and his history, explaining that his medication (Prevacid) was no longer relieving his symptoms.  Defendant Antonini alleged that Plaintiff did not have a medical order for a reflux diet and that he would request a dietician consult to advise Plaintiff about what foods to avoid.  Plaintiff was told that he needed a prosthetic to elevate his head from the waist up while in bed, and that pillows were ineffective to accomplish the desired medical objective of preventing damage to the esophagus from stomach fluid.

On December 27, 2002, Plaintiff was summoned to Health Services by Jayna Sharpley, H.U.M., who told him that Defendant Antonini had written that the medication had stabilized Plaintiff's GERD and removed Plaintiff from the Chronic Disease Index.  Sharpley further stated that Plaintiff would have a difficult time with medical personnel as a result of filing a grievance.  On January 17, 2003, Defendant Antonini requested a barium swallow radiography be performed on Plaintiff.  On January 27, 2003, Plaintiff received a step II grievance response stating that according to the medical service provider, an investigation had revealed that a "reflux diet" was

not indicated for Plaintiff's condition.  The misconduct of Defendant Antonini caused Plaintiff to suffer from pain, choking, convulsing, esophageal damage, a hiatal hernia, and an 8 to 44 percent increase in his risk of developing esophageal cancer.

Plaintiff was transferred to MBP on April 4, 2003.  Upon his arrival Defendant Carlyon terminated Plaintiff's prescribed drug combination therapy without providing an intake physical examination.  Defendant Carlyon prescribed a three meal moderate size "reflux diet" that Plaintiff claims did not comport with the medical standard of care.  On April 23, 2003, Plaintiff submitted a health care request for a prosthesis to elevate the head of his bed and a proper reflux diet.  On May 5, 2003, Plaintiff was told by Nurse Practitioner David Guinn that his request was being denied because of the MDOC budget crisis.

On May 30, 2003, Plaintiff was told that Defendant Carlyon was no longer at MBP and that if complications persisted, he should write Health Services.  On June 10, 2003, Plaintiff requested health care for abdominal, chest and stomach pain, and "choking off refluxed bodily fluid during sleep and waking hours."  On June 16, 2003, Plaintiff submitted a disbursement request to obtain copies of his medical records for the past six months.  On June 18, 2003, Plaintiff received 34 pages of his records, which showed that Plaintiff suffered from a very small sliding type of hiatal hernia.  In addition, the medical records show that Dr. Lyle S. Mindlin, D.O., noted a lesion within the wall of the distal esophagus and a smooth filling defect just above the diaphragm.

On June 24, 2003, Plaintiff was seen by Nurse Practitioner David Guin, who prescribed Gaviscon as an antacid.  On July 15, 2003, Plaintiff requested health care for pain and reflux and because Zantac was no longer providing relief.  On August 1, 2003, Plaintiff was evaluated by Defendant McConnell, who discontinued the Zantac and prescribed Aciphex.  On August 15, 2003, Plaintiff requested health care for pain and reflux, which caused shortness of breath

and a choking sensation.  Plaintiff again requested health care relating to his diet order.  On August 17, 2003, Plaintiff's three moderate size meal a day diet was discontinued, but it was not replaced with a six small meal a day diet as Plaintiff requested.  On September 16, 2003, Plaintiff was seen by Defendant Robinson, who stated that Plaintiff would not receive a medical prosthesis because of the MDOC budget crisis.

On October 30, 2003, Plaintiff requested health care for continued pain, reflux, and coughing up blood.  On October 31, 2003, Plaintiff received a response from Defendant Robinson, stating "According to doctor on 9/30/03 you are doing well and last examination normal, recommended elevation of the head and use medication.  Will see you 11/30/03."  On November 5, 2003, Plaintiff was informed by C. J. Strachan and Jim Armstrong of the BHCS Central Office that Defendant McConnell had falsely written in Plaintiff's record that a "prosthetic was tried in the past with little improvement and overall health good."  On December 23, 2003, Plaintiff received a step II grievance response falsely stating that Plaintiff had refused his appointment on November 17, 2003.

On January 20, 2004, John Kimsel, R.N., faxed Defendant Borgerding to request that Plaintiff be provided with a medical prosthetic to elevate the head of his bed.  On January 21, 2004, Plaintiff was seen by Defendant McConnell in response to a health care request submitted on December 29, 2003.  Defendant McConnell stated that no medication would provide Plaintiff with relief because his hiatal hernia needed to be repaired in order to stem the reflux.  Defendant McConnell noted that Prilosec OTC may not heal the esophagitis, but it was cheap and was the medication that Plaintiff would remain on.  Defendant McConnell refused to order an endoscopy or biopsy, nor would he refer Plaintiff to a specialist.  Defendant McConnell told Plaintiff that he was not required to allow Plaintiff to review the MDOC GERD Formulary, and that Plaintiff could file

- 9 -

all the grievances he wished.  Defendant indicated that as long as medical entries reflected that

Plaintiff's medical condition was stable and his overall health was good, there was nothing Plaintiff

could do about the denial of medical care.  Finally, Defendant McConnell indicated that he would

order a stool culture.

On February 17, 2004, John Kimsel responded to a letter by Plaintiff regarding a

"wedge" to elevate his head by stating that Defendant Borgerding would not grant the request.  On

March 8, 2004, Plaintiff was seen by Defendant McConnell, who stated that he would not order a

medical prosthetic or drug combination therapy unless it was court ordered because of the cost.  In

addition, Defendant McConnell stated that Plaintiff weighed 174 pounds, but that his medical file

contained many questionable entries over the accuracy of his weight.

On June 10, 2004, Plaintiff's bi-annual chronic care review occurred, during which

Defendant McConnell alleged that a medical prosthetic and surgery were needed.  Defendant

McConnell issued a permanent medical accommodation for an extra pillow, despite knowing that

such was not an appropriate medical substitute, because it was feasible economically.  Defendant

McConnell again refused to order an endoscopy, biopsy, or grant access to a specialist and again

falsified medical entries recording "fair health and GERD stable."  Defendant McConnell ordered

a lab test for H. pylori, although he knew that Plaintiff did not suffer from that diagnosis.

With regard to Plaintiff's claims against Defendant Royea, he states that on

December 17, 2003, he told Defendant Royea that he had a medical detail for light duty for two

weeks.  Defendant Royea screamed "Fuck that!"  Defendant Royea then ordered Plaintiff to either

do strenuous work or receive a misconduct for disobeying a direct order.

In their motion for summary judgment, Defendants MDOC, Caruso, Pramstaller,

Anderson, Borgerding, Royea, Epp, Jakubiszyn, and Spencer Burke (listed in the complaint as Doe

Spencer) claim that they are entitled to summary judgment because the alleged misconduct does not rise to the level of an Eighth Amendment violation.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states

a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be
> said to constitute an unnecessary and wanton infliction of pain or to be
> repugnant to the conscience of mankind. Thus, a complaint that a
> physician has been negligent in diagnosing or treating a medical
> condition does not state a valid claim of medical mistreatment under
> the Eighth Amendment. Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner. In
> order to state a cognizable claim, a prisoner must allege acts or
> omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate

and prison medical personnel regarding the appropriate medical diagnoses or treatment are not

enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No.

95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-

5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a

complete denial of medical care and those cases where the claim is that a prisoner received

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where,

as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5

(6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27, 2001; *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4, 1997).

       Defendants claim that Plaintiff has received and disagrees with the treatment he has received for GERD.  Defendants note that Defendant Anderson met with Plaintiff approximately once a week during November 2002, during which she evaluated his diet history and determined from Plaintiff's store orders that he had been purchasing and consuming food items that could increase reflux, including high fat items such as snack crackers, potato chips, zebra cakes, oatmeal pies, cookies, nutty bars, peanut butter, cheese curls, apple pie, sandwich spread, honey buns, corn chips, candy bars and other foods known to increase reflux.  Defendant Anderson also discovered that Plaintiff had been gaining weight, even though he was not eating much of the food included with meals served in the cafeteria and was complaining of vomiting regularly.  Defendant Anderson determined that based on Plaintiff's store orders, weight increase, symptoms of lactose intolerance and habit of skipping meals, there were lifestyle changes Plaintiff could make that would decrease his reflux symptoms.  Defendant Anderson educated Plaintiff on the recommended lifestyle changes, and gave him information on appropriate food items, recommending a regular diet.  Defendant Anderson attests that the plan was for Plaintiff to make the recommended lifestyle changes on the regular meal line, and if medications and those changes failed to control his reflux symptoms, a therapeutic diet would be the next course of action.  (*See* Defendant Anderson's affidavit, attached to the Defendant's motion for summary judgment.)  In the opinion of the undersigned, such conduct

- 13 -

does not constitute deliberate indifference.  Therefore, the undersigned recommends that Defendant

Anderson is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

        With regard to Plaintiff's claim against Defendant Royea, Defendants state that

Defendant Royea merely refused to relieve Plaintiff of his duties on December 13, 2003, in the

absence of a written medical detail.  Consequently, Defendant Royea contacted health care staff to

ascertain the truth of Plaintiff's claim.  Defendant Royea was advised by the doctor that Plaintiff

could perform his job duties if permitted to work at his own pace.  Therefore, Defendant Royea told

Plaintiff to continue working at his own pace.  Plaintiff replied that he wished to return to his cell,

and Defendant Royea told Plaintiff that if he chose to leave his job assignment, he would receive a

misconduct for disobeying a direct order.  (*See* Defendant Royea's affidavit, attached as an exhibit

to the motion for summary judgment.)  Because Defendant Royea was told by a doctor that Plaintiff

could work at his own pace, his conduct in ordering Plaintiff to do so did not constitute deliberate

indifference.  Therefore, the undersigned recommends that the court grant summary judgment to

Defendant Royea on Plaintiff's Eighth Amendment claim.

        With regard to Defendant Spencer Burke, Plaintiff claims that when he arrived at JCF,

Defendant Spencer Burke told him that his medical detail would not be acknowledged because it was

not issued by JCF staff.  In Defendant Spencer Burke's affidavit, which is attached to the motion for

summary judgment as an exhibit, Defendant Spencer Burke attests that he completed an intake

assessment on Plaintiff on December 9, 2002.  During the assessment, Defendant Spencer Burke

noted:

> [A] history of GERD, the prisoner stated he had medications, Reflux
> diet written due to order from sending facility with followup with
> doctor on 12-13-02, copy of diet order to Dietary to provide menus to
> chow hall, copy to secretary to type detail for Reflux diet to allow to
> eat in diet line.

- 14 -

(*See* Spencer Burke's affidavit, ¶ 4, which is attached to the brief in support of the motion for summary judgment as an exhibit.)  A copy of the intake screening assessment is also attached to the brief, which shows Plaintiff's current medications, that he was on a Reflux diet and was to be referred to the dietician, and that he was enrolled in the Chronic Care Clinic for GI (gastrointestinal) problems and follow-up was needed.  (*See* Transfer Assessment/Screening Form, dated December 18, 2002.)  A review of the record reveals that Defendant Spencer Burke had limited contact with Plaintiff during which he did an intake assessment.  Because this conduct does not evidence deliberate indifference to a serious medical need, Defendant Spencer Burke is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

In the brief in support of the motion for summary judgment, Defendant Jakubiszyn contends that he has received and responded to six health care requests from Plaintiff regarding gastrointestinal symptoms, and has responded to each by scheduling visits, one of which Plaintiff refused.  In addition, Defendant Jakubiszyn stated that he saw Plaintiff twice for sick calls and once for an unscheduled visit, but that Plaintiff never evidenced any acute symptoms that implied a need for an urgent physician follow-up.  In response, Plaintiff states that on October 30, 2003, Defendant Jakubiszyn denied him medical care for urgent symptoms, including coughing up blood, based on false entries in this medical record and falsified the medical record to show that Plaintiff refused his appointment.  In the opinion of the undersigned, such allegations are sufficient to show a genuine issue of material fact with regard to Defendant Jakubiszyn.

As noted above, Plaintiff claims that on February 17, 2004, John Kimsel responded to a letter by Plaintiff regarding a requested prosthesis to elevate his head.  In this response, Kimsel stated that Defendant Borgerding would not grant such a request.  Plaintiff asserts no other misconduct by Defendant Borgerding.  In the opinion of the undersigned, the denial of the requested

prosthesis, without more, is insufficient to show that Defendant Borgerding was deliberately indifferent to Plaintiff's serious medical needs.

Defendants Caruso, Pramstaller, and Epp claim that they are entitled to summary judgment because they were not personally involved in the alleged misconduct. Plaintiff contends that Defendants Caruso and Pramstaller are responsible for a pervasive custom or practice of denying, delaying and/or obstructing access to minimum medical care without regard to medical need in order to avoid spending money on medical treatment. Plaintiff further claims that Defendant Epp failed to conduct an investigation into the deprivation of prescribed medical care despite Plaintiff informing her of the violations.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing

that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso, Pramstaller, and Epp were personally involved in the activity which forms the basis of his claim.  Defendants Caruso, Pramstaller, and Epp's only roles in this action involve the denial of administrative grievances or the failure to act.  Defendants Caruso, Pramstaller, and Epp cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).  Accordingly, the Court concludes that Defendants Caruso, Pramstaller, and Epp are entitled to summary judgment.

Additionally, the undersigned notes that Defendant MDOC is entitled to summary judgment with regard to Plaintiff's Eighth Amendment claims.  Under *Will v. Michigan Department*

- 17 -

*of State Police*, 491 U.S. 58 (1989), a suit against a state, a state agency, or a state official in his

official capacity, is not a suit against a "person" under Section 1983. *Id.* Thus, such entities are not

subject to suit under 42 U.S.C. § 1983. In addition, it is well established that the Eleventh

Amendment bars suit against the State or one of its agencies in federal court unless the state has

given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v.*

*Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board

of Corrections). The State of Michigan has not consented to civil rights suits in the federal courts.

*See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars

Plaintiff's Eighth Amendment claims against the Michigan Department of Corrections.

    Plaintiff claims that the MDOC's GERD policy violates his rights under the the

American with Disabilities Act (ADA). The ADA provides that "no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as, with respect

to an individual: "[1] a physical or mental impairment that substantially limits one or more of the

major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as

having such an impairment." 42 U.S.C. § 12102(2).

    As noted in the brief in support of the motion for summary judgment, Plaintiff has

made no allegations showing that he has been excluded from programs or services on the basis of

his alleged disability. Rather, Plaintiff's claim is solely with regard to the quality of medical care

he has received. Such a claim does not show a violation of the ADA. Therefore, the undersigned

recommends granting summary judgment to the MDOC on this claim.

Plaintiff has also filed a motion for joinder (docket #62), in which he seeks to join a motion filed by Defendant McConnell which opposes the motion to dismiss. However, because the undersigned is recommending denial of that motion, Plaintiff's motion for joinder is properly denied as moot. Plaintiff has also filed a motion seeking summary judgment against Defendant Royea (docket #63) because of his insistence that Plaintiff not leave his work assignment. However, as noted above, Defendant Royea spoke to a doctor who said that Plaintiff could work at his own pace prior to refusing to let Plaintiff leave his job. Such conduct does not rise to the level of deliberate indifference. Therefore, the undersigned recommends denying this motion.

### III. Conclusion

In summary, in the opinion of the undersigned, the motion to dismiss filed by Defendants Hutchinson, CMS, Antonini, and Spitters (docket #24) is properly denied.

Plaintiff has failed to sustain his burden of proof in response to the motion for summary judgment (docket #34) filed by Defendants MDOC, Caruso, Pramstaller, Anderson, Borgerding, Rosea, Epp, Jakubiszyn, and Spencer Burke with regard to Defendants MDOC, Caruso, Pramstaller, Anderson, Borgerding, Royea, Epp, and Spencer Burke. However, the undersigned notes that Plaintiff has met his burden with regard to Defendant Jakubiszyn, who is not entitled to summary judgment at this time. Accordingly, it is recommended that defendants' motion for summary judgment (docket #34) be granted as to defendants MDOC, Caruso, Pramstaller, Anderson, Borgerding, Royea, Epp, and Spencer Burke and denied as to defendant Jakubiszyn.

Finally, the undersigned recommends that Plaintiff's pending motions for joinder and for partial summary judgment (docket #62 and #63) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


        /s/ Timothy P. Greeley           
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:  August 25, 2005